We have one more argument for the morning. Madam Clerk, would you please call the parties? It's number 24-2930 from Southern Iowa, United States v. Timothy Kavanagh. Ms. Jansen, when you're prepared. Good morning, Your Honors. May it please the Court. My name is Nova Jansen. I'm here today representing Mr. Timothy Kavanagh. We have a relatively straightforward case this morning involving a procedural sentencing error under United States Sentencing Guideline 5G 1.3b. Because that error was not harmless, it is our position that remand is required. Sentencing Guideline 5G 1.3b provides explicit rules for giving defendant a credit for time spent in custody for purely relevant conduct that will not otherwise be counted by the BOP. Misprovision is mandatory. It actually reads in the text that the court shall adjust the sentence for any period of imprisonment served when it is based purely on relevant conduct and it is clear that the BOP will not otherwise give credit for that time. That is the situation that we have here. Mr. Kavanagh was prosecuted as a felon in possession of a firearm. The entirety of the situation was a short window of time. He participated in a burglary. It was quickly discovered during that burglary he stole several firearms, some oxycodone in a vehicle. Police looked for the vehicle using the OnStar tracking system and located it. Promptly, Mr. Kavanagh fled. He was caught and a search discovered the stolen property and also some methamphetamine. Mr. Kavanagh received state sentences in two different counties in Iowa. He received a total of 30 years for burglary and theft in one county and a total of 11 years of consecutive sentences in the other county for possessing methamphetamine, possessing oxycodone, and for the flight from police. When his guidelines were calculated, there seems to be no dispute whatsoever that the 17 months and 21 days that he served in custody prior to his federal sentencing was entirely for relevant conduct. Both of the state cases arose out of the same incident, and in fact, as part of the guideline calculation in this case, Mr. Kavanagh received a four-point enhancement for possessing the firearm in connection with another felony offense, specifically the theft and the burglary. And the government's never disputed that, that it was relevant conduct, the state charges? That is my understanding, Your Honor, yes. There's really no claim that this is a mixed relevant conduct case, that it would fall under the other provision of 5G1.3. And is the other prong true as well? Do they concede that the BOP wouldn't give him credit? I believe that is also the case, Your Honor. They do concede the BOP will not give credit. Mr. Kavanagh was in federal court at all times on a writ, and he was serving that state sentence. When he was sentenced, he was returned back to state custody and remains there currently. Of course, under 3585B of Title 18, he will not receive credit for that time from the Bureau of Prisons. Well, did the district court acknowledge that it was relevant conduct? The district court engaged somewhat. Defense counsel requested the 17 months and 21 days be credited pursuant to 5G1.3. The district court did the analysis essentially backwards. And I think that's the problem here that creates a problem on the harmless error prong. Of course, this court's authority says that when there is a procedural sentencing error, of course, remand is required unless that error is harmless. Is it just completely unknown whether the court made a conclusion as to whether relevant conduct was implicated? Just ignored it or there's no finding? What's the state of the record as to the court acknowledging it's dealing with relevant conduct? I think the court did acknowledge this was entirely relevant conduct. Judge Locher acknowledged that the defense counsel had requested the time. He did give Mr. Kavanaugh the concurrent time for the remainder of his undischarged term of imprisonment. But what he did was first he calculated the guideline range without any consideration of 5G1.3, 151 to 180 months. On page 16 of the transcript, then he specifically says, I think 151 months is the right sentence. He says the guidelines got it right and I think a bottom of the guideline sentence is appropriate. And that is part of the problem here because at this point he hasn't fully calculated the guidelines because he hasn't factored in 5G1.3, which is a required part of that overall look at the guidelines. So when the judge starts off by saying the bottom of the guidelines, 151, is the correct sentence, that's actually an inaccurate statement. When we factor in 5G1.3 and we give, I'm going to round it to 18 months, 18 months off, the bottom of the guidelines is actually 132 months. Given the court's statement of its rationale that I want you to do some time for the federal firearms offense, and I guess the court senses that running these concurrent, that wouldn't happen, and I want to make sure there's time served for the federal offense. If this is sent back and done over, what's the sense that the sentence ultimately would be any different? Your Honor, I think it's certainly possible that the sentence may be the same, but we can't say for sure that that's the case, and that's really the key in the harmless error analysis. If Judge Locher had specifically said, no matter how I think of the 5G analysis, I believe that this 17 months and 21 days is the right amount of extra time on top of what the state gave you, clearly we would have no legs to stand on, and I think that this court would be well justified to find that that was harmless error. But here the court said, I find 151 is the right sentence, the guidelines got it right. Those weren't in fact the guidelines, and he doesn't engage in any way with the way that the guidelines actually incorporated that state conduct. In particular, 30 years of the sentence pertained to the burglary and theft. In a normal case, had Mr. Kavanaugh or a different defendant not been charged in state court, we would encompass all of that relevant conduct, of course, into the guidelines. That's what we sentence people for, is all relevant conduct. Here, the burglary and the theft were the basis of a four-point enhancement. That raised the guideline without that four-point enhancement, Mr. Kavanaugh's guideline range would have been 120 months at the bottom of the range with an offense level 27. The district court doesn't in any way engage with the way that the guidelines do encompass a very significant part of that state conduct, and he doesn't engage in any way of determining or telling the appeals court why that 17 months and 21 days is the appropriate incremental difference between the punishments that Mr. Kavanaugh got in the state court and the punishments that he got here in federal court, even though it's all one large package of relevant conduct. Your Honors, I have moved into my rebuttal time. I would save the remainder unless there are further questions at this time. I see none. Thank you, Ms. Jansen. Thank you. Mr. Hanson. Good morning. May it please the court. Kyle Hanson on behalf of the United States. 5G 1.3, like any guideline, is advisory. The court retains the ultimate discretion under Section 3553A to not follow the guidelines, and that's what happened in this case. The court exercised It would have been helpful if that was the intent of the court, had it said, you know, whether or not I grant the 17 1⁄2 months, this is my sentence. Something like that would have been helpful, and he didn't do that in this case. No, but looking at what he did say, I struggle to come up with anything more Judge Locher would say on remand about why he's not going to follow that recommendation for credit. I think you may be right. I think if we were to send it back, it probably would come back with the same sentence. But I'm just wondering, under Winnick, can we really do that? Do we have a clear enough record that this would have been the sentence no matter what? Yeah, and I would point the court to the Carter case, and specifically to Judge By's dissent, where he set out what he wanted to see. He wanted to see the court explaining what the guideline range is, the court explicitly taking off the number of months corresponding to the credit for time served, and then the court explicitly adding that time back as a variance. The majority in that case, which I think Your Honor was in the majority on that one, recognized that the district court didn't need to engage in that sort of formulaic structure of the sentence. And I'm not going so far as Judge By would have gone in that case. I'm just saying, had he said whether or not I give the credit, which doesn't involve recalculating the guidelines and that kind of thing, I would give this, this is my sentence. It's just not quite that clear to me. I mean, if there's something in the record pointed out to me that makes it that clear. No, and I think if the court had said those magic words, I don't think we would be here based on my opposing counsel's argument this morning. However, the court is doing the same thing that the district court did in Carter. It's acknowledging that the defense has asked for the credit. And in its discussion of the 3553A factors says, I'm not following the guidelines. I'm not granting the credit for that time served. And the court here gives a clear indication of why it's not following the guideline. It finds that it's not appropriate to take that time off, which essentially negates any punishment for the felony possession conviction. Well, that's not good. I think what he said is I want him to do time on these federal offenses. He's going to be doing a whole bunch of time on the federal offense, whether he does the 17 and a half months or not, right? Well, he's doing concurrent time. So what the court says is, I want to make sure there's some additional punishment for the fact that this offense involved the possession of firearms, which wasn't per se taken into account with the state penalties. So he is saying, I want that extra 17 and a half months to not be credited to his sentence under the 3553A considerations. Okay, if you can explain to me how that 17 and a half months makes him serve some federal time that he might not otherwise, because they are concurrent, I might be with you. So it's different because there is a very strong likelihood that under Iowa's sentence, he's not going to serve. He got a 41 year sentence. However, Iowa has an indeterminate sentencing structure. So even though the sentence says 41 years, it's only up to 41 years. And in fact, they get a day, 1.2 days of credit per day served, taken off just kind of automatically. So and then on top of that, there is the eligibility for parole. So he gets a three year minimum based on his convictions. So he's going to be eligible for parole well before he he serves the entirety of the sentence. But the district court here is recognizing those two sentences, the state and the federal sentences, are going to run concurrent for the most part. But there needs to be that extra time to acknowledge that he has the separate federal conviction for the firearms offense. And that's where he says, I don't find it appropriate under 3553A to give him credit for that time when he's serving the state sentence. And the court has asked about the Winnick case, and there are ingredients in the Winnick case that just aren't present here. In Winnick, the court applied a limitation that's found nowhere in 5G 1.3. It said he's only getting credit for the time served after he was charged federally. And then the court says, or this court said, we're uncertain about exactly what the district court meant by that. But it's different here. First, the district court knew that the defendant could receive credit under 5G 1.3, heard defense counsel's request for it, read the PSR, which PSR in paragraph 135 says he under 5G 1.3b is entitled to credit. And then the court explicitly says, I know you've requested it, but I'm choosing not to follow that suggestion for credit for time served. Was there ever any discussion of consecutive federal sentence? There was, and the court said, I'm going to follow that recommendation for concurrent sentences. The court is aware of what 5G 1.3b says, and it's making clear that it did not find that appropriate under its exercise of discretion. Well, it was apparently, looking at the words of the district court, apparently it was significant to the district court that the state sentences were not firearm convictions. Correct. And wanted to have some acknowledgment from the federal punishment to keep him in prison longer than he would otherwise get under concurrent sentences with the state offenses. Wouldn't the appropriate way to handle this would be to grant the credit and then vary based on that reason? So, again, that's what Judge Bayh wanted. Judge Bayh dissented and said he wanted to see the court explicitly acknowledge the reduction and then explicitly vary back up by canceling it out. But the majority in Carter. Carter was the name of that case? Carter, correct, that's cited in our brief. So what the Carter majority said was, and I guess you're more of the expert on that since you were on the panel. Maybe not. The court looked at the district court record and said, it's clear that the district court understood the 5G 1.3 argument, and it's clear that the district court decided not to follow that suggested sentence. And in all the portions in Carter of the sentencing transcript that were quoted in the opinion, the district court never says the word variance. And I actually went back and read the full transcript from Carter, and the word variance never comes out of the district court's mouth. Instead, it's clear enough from what the district court said there, acknowledging the request for credit, and explicitly saying that the court was not going to follow that request. That was enough to show that the district court acknowledged what the guideline sentence would be, and specifically chose not to impose that after considering the 3553 factors. What happened here is no different. The court expressly recognized what the guideline says and said, I'm not going to follow that. I think it's inappropriate in its discussion of the 3553A factors. So because the district court did not commit a procedural error and did not abuse its ultimate sentencing discretion for Mr. Kavanaugh, the United States asks that this court affirm his sentence. Thank you, Mr. Hanson. Your Honors, I'd make just a few points in rebuttal. First, as to the Carter case, it is one of only four cases that this court has specifically decided on the 5G1.3 when it's based solely on relevant conduct. It is the only one that has been affirmed, and I do think that there are some distinctions. As Mr. Hanson was saying, he went through the transcript in Carter. I also did do that. The court did not comment on a variance specifically, but the court in Carter did actually go through and talk about the reasons for 5G1.3, why we give that credit, and talked about why it wasn't going to do it in that particular case. There was a very strong record, I disagree with 5G1.3 in the Carter case. There's no such record here. Secondly, Carter was decided back in 2011. Since that time, this court in 2020 decided Winnick, which very clearly sets forward that this is a mandatory four-step process. And like Your Honor just recently said, the approach that is not just the best approach here, but that's the required approach here, is for the judge to apply 5G1.3 first, and then make the variance decision. I think there's actually language in McKinsey that says that. Is Carter and Winnick inconsistent? I don't think that they are inconsistent. The general template for how 5G1.3 works there. But when it comes to the harmlessness analysis, Carter had a much, much stronger record here. In fact, I think that when we're talking about what Judge Locher was thinking, Mr. Kavanaugh had 41 years of time in state court. The 151-month sentence he got in federal court is 12.5 years. Now, it's true that in Iowa you serve dramatically less than that full sentence, but we have no reason to think that it's going to be less than 12.5 years. He could fully discharge his state sentence, and this federal sentence is going to run concurrently. The fact is Judge Locher didn't engage with any of that analysis. He didn't engage with the fact that some of these state charges have mandatory minimums before Mr. Kavanaugh can even be eligible for parole on those charges. So the Carter record is just much more robust on the harmlessness error here. I think we have to engage in quite a bit too much speculation to know for sure what Judge Locher would have done absent the 5G error. If there are no other questions, Your Honor, I've run out of time. Thank you, Ms. Jansen. Thank you also, Mr. Hanson. The court appreciates both counsel's participation and argument before the court. It's been helpful, and we'll do our best. Thank you.